UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HENRY CHE NDIFOR,<br>6123 Walbridge Street<br>Capitol Heights, MD 20743<br><br>      Plaintiff,<br><br>   v.<br><br>DISTRICT OF COLUMBIA DEPARTMENT<br>OF CORRECTIONS,<br>2000 Fourteenth Street NW<br>Seventh Floor<br>Washington, DC 20009<br><br>      Defendant. | Civ. Action No. _____<br>(Jury Trial Demanded) |

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

The Plaintiff, Henry Che Ndifor, by and through undersigned counsel, hereby files suit against the named Defendant for the causes of action stated as follows:

### I. INTRODUCTION

1. Plaintiff Henry Che Ndifor ("Plaintiff" or "Mr. Ndifor") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, ("Title VII") for relief from discrimination based on national origin (Cameroon) and retaliation for engaging in protected activity, resulting in the deterioration of Plaintiff's health and well-being and substantial damage to Plaintiff's career and retirement benefits.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to Title VII, 42 U.S.C. §§2000e-16, 2000e-5(f)(1) and (3), and this Court has jurisdiction pursuant to the FLSA, 29 U.S.C. §216(b). Further, this Court has jurisdiction over this Complaint because there is diversity of the parties and presents a question of federal law. 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity).

3. Venue properly lies within this Court pursuant to 28 U.S.C. § 1391, 42 U.S.C. § 2000e-5(f)(3). The District of Columbia Department of Corrections' principal offices are located in the District of Columbia, and a substantial part of the acts and omissions that give rise to this Complaint occurred within the District of Columbia.

## III. PARTIES

4. Mr. Ndifor is currently domiciled at 2007 Palmer Park Road, Hyattsville, Maryland 20185. At all relevant times, Mr. Ndifor has been an employee of the District of Columbia Department of Corrections ("DCDOC"). Mr. Ndifor is a resident of Prince Georges County, Maryland, and a United States citizen.

5. Defendant, DCDOC, is a law enforcement agency of the District of Columbia that operates jails and oversees the incarceration of relevant detainees in Washington, D.C. DCDOC's stated mission is "to ensure public safety for citizens of the District by providing an orderly, safe, secure and humane environment for the confinement of pretrial detainees and sentenced inmates, while providing meaningful opportunities for community reintegration" and its principal office's address is 2000 Fourteenth Street NW, Washington, DC 20009.

6. Defendant is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of employees or agents of Defendant; in addition, Defendant is the employer of persons who have committed negligent, discriminatory acts and/or omission against Plaintiff within the course and scope of his employment. Therefore, Defendant is liable pursuant to the doctrine of *respondeat superior*.

## IV.   EXHAUSTION OF REMEDIES

7. Mr. Ndifor has exhausted all his administrative remedies.

8. On or about January 4, 2022, Mr. Ndifor filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC:" Charge No. 570-2021-02437), which included allegations that Defendant has unlawfully discriminated against him, retaliated against him and failed to properly pay wages, overtime and retirement compensation.

9. On July 15, 2022, the EEOC issued Mr. Ndifor a Notice of Right to Sue letter, providing Mr. Ndifor with 90 days to file a complaint in federal court.

## V.   FACTS

10. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

11. Plaintiff is Cameroonian (i.e., his national origin is Cameroon, in west Africa).

12. At all relevant times, DCDOC employed Plaintiff as a Supervisory Correctional Officer with various ranks (Lieutenant, Captain) out of DCDOC's facilities in Washington, D.C.

13. Defendant hired Plaintiff on or about February 25, 2013, with the officer rank of Lieutenant.

14. As a Lieutenant, Plaintiff's duties included, without limitation, supervising various zones where residents are housed, making sure line officers adhered to policy, procedure and their post orders. Plaintiff also served as the Supervisor for intake at the Central Cell Block (CCB) located in downtown Washington, D.C.

15. As part of Plaintiff's new hire orientation, and again in a subsequent management meeting, Plaintiff was informed that overtime hours for management staff (as Plaintiff was classified) are paid on a straight hourly, not one-and-a-half (1.5) times the hourly rate ("time and a half").

16. From his hire, Plaintiff's overtime hours were paid at his straight hourly rate, not the "time and a half" rate.

17. It was not until 2021, eight years after his hire, Plaintiff learned that Defendant was paying his fellow officers of different national origins the "time and a half" rate for their overtime hours. Plaintiff discovered this after being promoted and one of his direct reports emailed Plaintiff his paystub about the subordinate's overtime hours.

18. Plaintiff found that colleagues from the United States and Latin America were receiving the "time-and-a-half" overtime compensation rate, even though they performed the same work at the same rank.

19. Defendant has offered no explanation as to why it failed to properly compensate Plaintiff, yet it managed to do so for other officers of the same rank with different national origins.

20. Plaintiff's overtime rate was not the only disparate treatment he suffered. Upon Plaintiff's hire, Defendant offered its officers a 5.5% contribution into a 401(a) retirement account as part of its benefits package.

21. Despite making this contribution to Plaintiff's colleagues of the same rank but different national origins, Defendant only made a 5.0% contribution for Plaintiff.

22. From his discovery of this disparate treatment in 2013, Plaintiff made numerous attempts to have the contribution corrected, including numerous phone calls, letters, and emails to various DCDOC staff and departments.

23. Finally, in 2018, Plaintiff contacted Ms. Wendy Rooker in Defendant's Human Resources department. Ms. Rooker acknowledged that Plaintiff had been improperly undercompensated for the past five years.

24. Defendant ultimately corrected the retirement contribution to 5.5%, but has not retroactively corrected the five years it undercompensated him.

25. Nor has Defendant offered any explanation as to why it was able to properly compensate officers of other national origins, nor why it took five years to acknowledge and correct what should have been a straightforward fix.

26. On or about May 4, 2020, in part due to Plaintiff's experience, hard work, devotion, qualifications, and reliability, Defendant promoted Plaintiff to the rank of Captain.

27. As a Captain, Plaintiff's duties have included, without limitation, Shift Commander on the day and night shift, Relief Captain on the day and night shift, and more recently, the Restrictive Housing Commander. Plaintiff supervises other supervisors to ensure compliance with the restrictive housing policy and procedure.

28. Despite this recognition, Defendant's disparate treatment continued.

29. Defendant failed to increase Plaintiff's pay from the Lieutenant rate to the Captain rate upon his promotion.

30. Plaintiff immediately notified Defendant that his pay rate was not accurate.

31. It took Defendant eight months to properly pay Plaintiff at the Captain rank, despite Plaintiff's repeated calls and emails requesting the correction.

32. Meanwhile, Plaintiff is aware that his other colleagues of different national origin who received the same promotion had no such issues with immediately receiving the new pay rate commensurate with their rank.

33. Defendant has acknowledged some of Plaintiff's requests to correct his pay and retirement compensation, but usually to route him to another person or office, not to address his situation. For example, in June 2021, Plaintiff emailed his deputy director, Ms. Wanda Patten, about the eight months he worked as a Captain but was paid as a Lieutenant. Ms. Patten directed him to Ms. Denise Shell-McGill. Ms. Shell McGill then ignored Plaintiff's repeated outreach. Similarly, in August 2019, Plaintiff contacted Ms. Rooker, who helped him the year before, about retroactively correcting his retirement contributions. Ms. Rooker referred him to Ms. Pamela Gary. Ms. Gary subsequently ignored him.

34. Plaintiff worked diligently for seven years before being promoted. Plaintiff is aware of nine other individuals of different national origin who were hired as Lieutenants after him yet promoted to Captain and beyond ahead of him: Major Brian Kendall, Major Manuel William, Major Sheila Marr, Captain Ma' Rion Boyd, Captain Mulet Dompierre, Captain Jesse Wilson, Captain Antoine Cobb, Captain Kevin Bruce, and Captain Sandra Griffin.

35. Plaintiff was passed over for promotion despite the fact that when Plaintiff was a Lieutenant, he routinely filled in for Captains when they called out of work.

36. Moreover, Plaintiff trained some of the above individuals who were promoted over him.

37. On or about November 30, 2021, Defendant notified Plaintiff it was issuing him a disciplinary suspension.

38. The suspension was allegedly based on insubordination for failing to have inspection reports properly completed.

39. However, for part of the timeframe cited for the missing reports, Plaintiff was on approved/acknowledged sick leave, and for the remainder of the relevant timeframe, Plaintiff showed he followed protocol and carried out orders, but another individual responsible for another part of the process has failed to deliver their part.

40. In the face of this clear evidence that any diligence into the matter would have revealed, Defendant had no choice but to rescind the suspension.

41. Despite rescinding the suspension, the fact that Defendant attempted to impose that level of discipline, after Plaintiff's repeated, legitimate complaints and requests to be treated fairly, reveals Defendant's retaliatory animus against Plaintiff.

42. Throughout Plaintiff's employment, Defendant has repeatedly and systematically undercompensated him and ignored his repeated legitimate requests to correct his compensation.

43. Ultimately, Defendant began manufacturing false reasons to discipline him, including accusing him of failing to complete reports when he was out on sick leave.

44. Plaintiff's non-Cameroonian colleagues faced no such treatment.

## VI.  CAUSES OF ACTION

**COUNT ONE**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. §§2000e, *et seq.***
**(Discrimination due to National Origin)**

45. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

46. Plaintiff is from Cameroon, and as such, is a member of a protected class.

47. Plaintiff was subjected to materially adverse employment actions, including Defendant's failure to properly pay Plaintiff's rightful overtime rate, failure to provide the promised retirement contribution, failure to give Plaintiff the appropriate and timely raise upon his promotion, and failing to reasonably promote Plaintiff in a timely fashion. Any reason proffered would not be legitimate, and it would be pretext.

48. Prior to the allegations herein being asserted, Defendant was aware of Plaintiff's national origin.

49. As an employee of Defendant, Plaintiff was treated differently and subjected to different terms and conditions of employment due to his national origin.

50. Defendant intentionally discriminated against Plaintiff because of his national origin.

51. Defendant limited, segregated and classified Plaintiff in a way which deprived him of employment opportunities because of his national origin.

52. Upon information and belief, other employees who were similarly situated have received different terms and conditions of employment.

53. By discriminating against Plaintiff for his national origin, Defendant acted with malice or with reckless or callous indifference.

### COUNT TWO
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, *et seq.*
### (Retaliation)

54. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

55. Plaintiff engaged in protected activity by raising his concerns to various DCDOC staff about his disparate treatment in terms of (i) his retirement contributions; (ii) his overtime rate; (iii) his raise; and (iv) the false disciplinary actions alleged against him.

56. Plaintiff was subjected to materially adverse employment actions, including increased scrutiny and threatened disciplinary action (suspension), along with Defendant's failure to properly pay Plaintiff's rightful overtime rate, failure to provide the promised retirement contribution, failure to give Plaintiff the appropriate and timely raise upon his promotion, and failing to reasonably promote Plaintiff in a timely fashion.

57. Prior to the allegations herein being asserted, Defendant was aware of Plaintiff's protected activity and national origin.

58. Defendant took these actions against Plaintiff due to his protected activity.

59. Defendant intentionally attempted to punish Plaintiff and discourage others like him because of his protected activity.

60. Defendant limited, segregated and classified Plaintiff in a way which deprived him of employment opportunities because of his protected activity.

61. Upon information and belief, other employees who were similarly situated have received different terms and conditions of employment.

62. Plaintiff has incurred significant loss, including loss of reputation and loss of career opportunities now and into the future, and all the other losses stated without Plaintiff contributing in any way thereto.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

    a. Award compensatory damages permitted by statute;

  b. Award all lost compensation, including wages, overtime and retirement contributions;

  c. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct;

  d. Award reasonable attorney fees, costs, and expenses incurred for this action;

  e. Order Defendant to expunge any relevant adverse action in the Plaintiff's employment file;

  f. Order Defendant to institute a policy and procedure to be implemented against discrimination;

  g. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

  h. Supervisory training for the supervisors at issue herein;

  i. Order that Defendant promote Plaintiff to Major as it has done for his similarly-situated colleagues;

  j. Award equitable, declaratory, and injunctive relief; and

  k. Award such other and further relief as this Honorable Court deems just and proper.

## VIII.  EQUITABLE RELIEF

63. Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

64. Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present clear and present dangers to the employees of Defendant and could result in further illegal actions on the party of Defendant, by and through its agents, servants and employees.

65. Because of the damage posed by forcing Plaintiff to continue to work in while being undercompensated, Plaintiff respectfully asks this Court to order Defendant to undertake all efforts to ensure it eliminates all failures in its obligations to employees such as Plaintiff.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Order the Defendant to institute a policy and procedure to be implemented against discrimination;

b. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

c. Supervisory training for the supervisors at issue herein; and

d. Such other and further relief as this Court deems just and proper.

### IX. JURY DEMAND

66. Plaintiff demands a trial by jury on all issues set forth herein.

Respectfully submitted,

*A Marques Pitre, Esq.*

---

A. Marques Pitre, Esq.
(DC Bar No. 503119)
PITRE & ASSOCIATES, LLC.
Ronald Reagan Building &
International Trade Center
1300 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Main Tel. 202-204-3006
Direct Tel. 309-287-1914
Email: Ampitre@ampitreassociates.com

*Counsel for Plaintiff*