**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HENRY CHE NDIFOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 22-3066 (RBW) |
| | ) |
| DISTRICT OF COLUMBIA | ) |
| DEPARTMENT OF CORRECTIONS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

 The plaintiff, Henry Che Ndifor, brings this civil action against the defendant, the District of Columbia Department of Corrections, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e <u>et seq.</u> ("Title VII"), asserting claims for discrimination based on national origin and retaliation. <u>See</u> Complaint and Demand for Trial by Jury ("Compl.") ¶ 1, ECF No. 1. Currently pending before the Court is the defendant's motion to dismiss. <u>See</u> Defendant District of Columbia Department of Corrections' Motion to Dismiss the Complaint ("Def.'s Mot." or the "defendant's motion") at 1, ECF No. 6. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant in part, deny in part, and deny without prejudice in part the defendant's motion.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) Plaintiff Henry Che Ndifor's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 8; and (2) the Reply in Support of Defendant District of Columbia Department of Corrections' Motion to Dismiss the Complaint ("Def.'s Reply"), ECF No. 9.

# I.   BACKGROUND

## A.   Factual Background

The following allegations are taken from the plaintiff's Complaint.  The plaintiff is a male United States citizen, <u>see</u> Compl. ¶ 4, whose "nation[] [of] origin is Cameroon," <u>id.</u> ¶ 11. "At all relevant times, [the plaintiff] has been an employee of [the defendant,] the District of Columbia Department of Corrections ('DCDOC')[,]" <u>id.</u> ¶ 4, "a law enforcement agency . . . that operates jails and oversees the incarceration of relevant detainees in Washington, D.C.[,]" <u>id.</u> ¶ 5. "[The d]efendant hired [the p]laintiff on or about February 25, 2013, with the officer rank of Lieutenant."  <u>Id.</u> ¶ 13.  And, "[a]t all relevant times, [the defendant] employed [the p]laintiff as a Supervisory Correctional Officer with various ranks ([e.g.,] Lieutenant, Captain) out of [the defendant's] facilities in Washington, D.C."  <u>Id.</u> ¶ 12.

At the plaintiff's "new hire orientation, and again in a subsequent management meeting, [he] was informed that overtime hours for management staff (as [the p]laintiff was classified) are paid on a straight hourly [rate], not one-and-a-half [ ] times the hourly rate ('time and a half')." <u>Id.</u> ¶ 15.  "From his hire, [the p]laintiff's overtime hours were paid at his straight hourly rate, not the 'time and a half' rate."  <u>Id.</u> ¶ 16.  "It was not until 2021, eight years after his hire, [that the p]laintiff learned that [the d]efendant was paying his fellow officers of different national origins the 'time and a half' rate for their overtime hours[,]" <u>id.</u> ¶ 17, "even though they performed the same work at the same rank[,]" <u>id.</u> ¶ 18.

Also, "[u]pon [his] hire," the plaintiff was informed that "[the d]efendant offered its officers a 5.5% contribution into a 401(a) retirement account as part of its benefits package."  <u>Id.</u> ¶ 20.  In 2013, the plaintiff discovered that, "[d]espite making [the 5.5%] contribution to [the p]laintiff's colleagues of the same rank but different national origins, [the d]efendant only made

a 5.0% contribution for [the p]laintiff[.]" Id. ¶ 21.  After this discovery, "[the p]laintiff made

numerous attempts to have the contribution corrected, including numerous phone calls, letters,

and emails to various DCDOC staff and departments." Id. ¶ 22.  "[I]n 2018, [the p]laintiff

contacted [an employee] in [the d]efendant's Human Resources department[, who] . . .

acknowledged that [the p]laintiff had been improperly undercompensated for the past five years"

in regard to his retirement contribution.  Id. ¶ 23.  The defendant "ultimately corrected the

[plaintiff's] retirement contribution to 5.5%, but has not retroactively corrected the five years it

undercompensated him." Id. ¶ 24.

The plaintiff "worked diligently for seven years before being promoted[,]" id. ¶ 34, "[o]n

or about May 4, 2020," id. ¶ 26, but is "aware of nine other individuals of different national

origin who were hired as Lieutenants after him yet [were] promoted to Captain and beyond

ahead of him[,]" id. ¶ 34.  The plaintiff "was passed over for promotion" even though "he

routinely filled in for Captains when they called out of work[,]" id. ¶ 35, and "trained some of

the [ ] individuals who were promoted over him[,]" id. ¶ 36.  Additionally, after the plaintiff was

"promoted [ ] to the rank of Captain" in 2020, id. ¶ 26, "[the d]efendant failed to increase [the

p]laintiff's pay from the Lieutenant rate to the Captain rate[,]" id. ¶ 29.  Although the "[p]laintiff

immediately notified [the d]efendant that his pay rate was not accurate[,]" id. ¶ 30," [i]t took [the

d]efendant eight months to properly pay [the p]laintiff at the Captain rank, despite [the

p]laintiff's repeated calls and emails requesting the correction[,]" id. ¶ 31.  The plaintiff's

"colleagues of different national origin who received the same promotion had no such issues

with immediately receiving the new pay rate commensurate with their rank." Id. ¶ 32.

"On or about November 30, 2021, [the d]efendant notified [the p]laintiff it was issuing

him a disciplinary suspension[,]" id. ¶ 37, that was "allegedly based on insubordination for

failing to have inspection reports properly completed[,]" id. ¶ 38.  However, "for part of the timeframe cited for the missing reports, [the p]laintiff was on approved/acknowledged sick leave, and for the remainder of the relevant timeframe, [he] showed he followed protocol and carried out orders," but that the process was not properly executed by a different employee.  Id. ¶ 39. Although the defendant later "rescind[ed] the suspension[,]" id. ¶ 40, "the fact that [the d]efendant attempted to impose that level of discipline, after [the p]laintiff's repeated, legitimate complaints and requests to be treated fairly, reveals [the d]efendant's [allegedly] retaliatory animus against [the p]laintiff[,]" id. ¶ 41.

**B.    Procedural Background**

"On or about January 4, 2022, [the plaintiff] filed a charge of discrimination with the Equal Employment Opportunity Commission ('EEOC'[)]" against the defendant, "which included allegations that [the d]efendant has unlawfully discriminated against him, retaliated against him[,] and failed to properly pay wages, overtime[,] and retirement compensation."  Id. ¶ 8.  Subsequently, "[o]n July 15, 2022, the EEOC issued [the plaintiff] a Notice of Right to Sue letter, providing [the plaintiff] with [ninety] days to file a complaint in federal court."  Id. ¶ 9.

On October 10, 2022, the plaintiff initiated this civil action alleging "discrimination based on his national origin [ ] and retaliation for engaging in protected activity[.]"  Id. ¶ 1.  On December 16, 2022, the defendant filed its motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).  See Def.'s Mot. at 1.  The plaintiff filed his opposition on February 1, 2023, see Pl.'s Opp'n at 1, and the defendant filed its reply in support of its motion on February 13, 2023, see Def.'s Reply at 1.

## II.      STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests whether a complaint has properly "state[d] a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged."  Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth."  Iqbal, 556 U.S. at 679.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678 (citing Twombly, 550 U.S. at 555).  Also, the Court need not "accept legal conclusions cast as factual allegations" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]"  Hettinga, 677 F.3d at 476.  The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice."  Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

# III.    ANALYSIS

The defendant argues that the Complaint should be dismissed because the District of Columbia Department of Corrections "is not a proper defendant[,]" Def.'s Mot. at 1, and "substitut[ing] the District of Columbia as the proper defendant[,]" Memorandum of Points and Authorities in Support of Defendant District of Columbia Department of Corrections' Motion to Dismiss the Complaint ("Def.'s Mem.") at 5, ECF No. 6, would be futile "because [the p]laintiff's claims fail to state a claim for relief[,]" id.  The defendant asserts that "even if [the p]laintiff had sued the proper defendant, his Title VII claims still fail" because his "discrimination claim is time-barred" and his "retaliation claim is unexhausted and inadequately pleaded."  Def.'s Mot. at 1.  The Court will first address whether the District of Columbia Department of Corrections is a proper defendant and, if not, whether substitution of the proper defendant is appropriate.  The Court will then turn to the defendant's challenges to the plaintiff's Title VII discrimination and retaliation claims.

## A.    Whether the District of Columbia Department of Corrections is Non Sui Juris and, if So, Whether Substitution of the Proper Defendant is Appropriate

As a preliminary matter, the defendant argues that the plaintiff's Complaint should be dismissed because the District of Columbia Department of Corrections, "[a]s a subordinate agency of the District of Columbia," is "non sui juris and therefore not subject to suit as a separate entity" apart from the District of Columbia.  Def.'s Mem. at 4.  The defendant acknowledges that "[w]hen claims are brought against a non sui juris entity, courts may substitute the non sui juris entity for the proper defendant[,]" id. (citing Sampson v. D.C. Dep't of Corr., 20 F. Supp. 3d 282, 285 (D.D.C. 2014)), but it argues that the Court "should not substitute the District of Columbia as the proper defendant [in this case,]" id. at 5, because substitution would be futile as "[the p]laintiff's claims fail to state a claim for relief[,]" id.  In

6

response, the plaintiff concedes that he "has [ ] named an improper defendant[,]" but argues that this "should not end this Court's adjudication of [his] claims." Pl.'s Opp'n at 7. Rather, the plaintiff asserts that "this Court should permit [him] to amend his Complaint for the purpose of substituting the District of Columbia as the proper party defendant in place of the [DC]DOC" under Federal Rule of Civil Procedure 21. Id. at 8.

"Agencies and departments within the District of Columbia government can[]not be sued as separate entities." Parker v. District of Columbia, 216 F.R.D. 128, 130 (D.D.C. 2022); see also Arnold v. Moore, 980 F. Supp. 28, 33 (D.D.C. 1997) ("Governmental agencies of the District of Columbia are not suable entities, or non sui juris."). This rule, known as the non sui juris rule, applies in the Title VII context. See Raney v. District of Columbia, 892 F. Supp. 283, 289 (D.D.C. 1995) ("In a Title VII suit against the District of Columbia, only the District itself, and not its departments or agencies, may be the proper defendant."). "When a plaintiff erroneously names as a defendant a District of Columbia agency instead of the District of Columbia itself, a court may substitute the District as a defendant for its agency." Sampson, 20 F. Supp. 3d at 285. However, "the court may decline to do so if substitution would be futile[.]" Lockett v. Metro. Police Dep't, No. 22-cv-2935 (CJN), 2023 WL 4824735, at *1 (D.D.C. July 27, 2023) (citing Carter-El v. D.C. Dep't of Corr., 893 F. Supp. 2d 243, 247–48 (D.D.C. 2012) (Walton, J.)).

Here, the plaintiff filed his Complaint against the District of Columbia Department of Corrections, see Compl. at 1, which he concedes is "an improper defendant[,]" Pl.'s Opp'n at 7. Because "the [District of Columbia] Department of Corrections is not an entity capable of being sued separate from the District of Columbia[,]" Carter-El, 893 F. Supp. 2d at 247—i.e., it is non sui juris—the Court may substitute the proper defendant so long as "substitution would [not] be

futile," <u>Lockett</u>, 2023 WL 4824735, at *1.  As detailed below, the Court ultimately concludes that one aspect of the plaintiff's Title VII discrimination claim—<u>i.e.</u>, his allegation that the defendant failed to pay him the correct overtime rate—survives the defendant's motion to dismiss, <u>see</u> <u>infra</u> Section III.B.1.d, and that the plaintiff may amend his Title VII retaliation claim, <u>see</u> <u>infra</u> Section III.C.  Accordingly, because substitution would not be futile in this case, <u>cf.</u> <u>Lockett</u>, 2023 WL 4824735, at *1 (concluding that "[s]ubstituting the [proper defendant] . . . would be futile" where "[the plaintiff] fail[ed] to state a claim for relief"), the Court will "substitute the District [of Columbia] as a defendant for its agency[,]" <u>Sampson</u>, 20 F. Supp. 3d at 285.

**B.    The Plaintiff's Title VII Discrimination Claim**

Next, the Court will address the defendant's challenge to the plaintiff's Title VII national origin discrimination claim.

### 1.    Whether the Plaintiff Timely Exhausted His Administrative Remedies

In Count One of his Complaint, the plaintiff alleges that the defendant discriminated against him because of his national origin when the defendant failed to (1) "provide [him] the promised retirement contribution," (2) "give [him] the appropriate and timely raise upon his promotion [to the rank of Captain]," (3) "reasonably promote [him] in a timely fashion[,]" and (4) "properly pay [his] rightful overtime rate[.]"  Compl. ¶ 47.  In its motion to dismiss, the defendant argues that the plaintiff's discrimination claim in Count One is "untimely because [the p]laintiff failed to file his EEOC charge within the 300-day filing period after the alleged discriminatory acts."[2]  Def.'s Mem. at 5.  In his opposition, the plaintiff invokes the Lilly

---

[2] The defendant has attached a copy of the plaintiff's EEOC charge of discrimination to its motion to dismiss, <u>see</u> Def.'s Mot., Exhibit ("Ex.") 1 (Charge of Discrimination ("EEOC Charge")) at 1, ECF No. 6-1, which the Court may consider without converting the defendant's motion into a motion for summary judgment, <u>see</u> Ndondji v.

(continued . . .)

Ledbetter Fair Pay Act, <u>see</u> Pl.'s Opp'n at 9 (citing 42 U.S.C. § 2000e-5(e)(3)(A)), arguing that his claim regarding the defendant's failure to properly pay him the correct overtime rate is timely because he "was and <u>is affected</u> by the [d]efendant's discriminatory compensation decision beginning in 2013, every time the [p]laintiff was/is paid a different hourly rate than his similarly situated colleagues of a different national origin," <u>id.</u> (emphasis in original).  The plaintiff further argues that the "same analysis equally applies to the [p]laintiff's claims against the [d]efendant for failing to provide [the p]laintiff the correct retirement contribution, failing to timely increase [the p]laintiff's pay after his promotion to Captain in May 2020, and failing to promote him to Captain in a similar timeframe as similarly situated colleagues of a different national origin, and thus, those claims are also timely under Lilly Ledbetter [Fair Pay Act]." <u>Id.</u>

 "Title VII '[c]omplainants must timely exhaust the[ir] administrative remedies before bringing their claims to court.'" <u>Payne v. Salazar</u>, 619 F.3d 56, 65 (D.C. Cir. 2010) (alterations in original) (quoting <u>Bowden v. United States</u>, 106 F.3d 433, 437 (D.C. Cir. 1997)).  "In the District of Columbia, [ ] an EEOC charge must be filed within 300 days of the date of the allegedly discriminatory/retaliatory act." <u>Duberry v. Inter-Con Sec. Sys., Inc.</u>, 898 F. Supp. 2d 294, 298 (D.D.C. 2012).  <u>See</u> 42 U.S.C. § 2000e-5(e)(1); <u>Craig v. District of Columbia</u>, 74 F. Supp. 3d 349, 361 (D.D.C. 2014) ("Ordinarily, . . . a plaintiff alleging a violation of Title VII must file an EEOC charge within 180 days of the date that the allegedly discriminatory act occurred[; however,] [i]n the District of Columbia . . . a 'worksharing agreement' between the EEOC and the [District's Office of Human Rights ('DCOHR')] results in the automatic cross-filing of an EEOC complaint with the [DCOHR], thereby extending the filing deadline for

---

(. . . continued)

<u>InterPark Inc.</u>, 768 F. Supp. 2d 263, 272 (D.D.C. 2011) ("A court may consider an EEOC complaint and Notice of Charge without converting a motion to dismiss into a motion for summary judgment because such records are public document[s] of which a court may take judicial notice." (alteration in original) (internal quotation marks omitted)).

plaintiffs in the District to 300 days." (citing 42 U.S.C. § 2000e-5(e)(1); Carter v. George Wash. Univ., 387 F.3d 872, 879 (D.C. Cir. 2004))).

Moreover, "[e]ach incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice[,]'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002), and "starts a new clock for filing charges alleging that act[,]" id. at 113.  Thus "[t]o be actionable, a discrete act—an event that takes place at a particular point in time—must occur within the filing period," Dickens v. Dep't of Consumer & Regul. Affs., 298 F. App'x 2, 3 (D.C. Cir. 2008) (internal quotation marks omitted), and "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," Morgan, 536 U.S. at 113.

However, the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (Jan. 29, 2009) (the "Ledbetter Act") may serve to revive otherwise time-barred claims if the alleged action of the employer was a "discriminatory compensation decision or other practice." Id.  The Ledbetter Act, which amended Title VII, states that

> an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter . . . when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A).  Additionally, the Ledbetter Act provides that liability

> may accrue and an aggrieved person may obtain relief . . . , including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

Id. § 2000e-5(e)(3)(B).  "In other words, [under this Act] each paycheck resulting from the original discriminatory compensation decision or other practice triggers a new filing period, in

effect reviving a claim that otherwise would have been time-barred because of a failure to exhaust administrative remedies within 180 days of the original discriminatory compensation decision or practice."  Johnson v. District of Columbia, 632 F. Supp. 2d 20, 22 (D.D.C. 2009) (internal quotation marks omitted).

### a.      The Defendant's Alleged Failure to Retroactively Amend the Plaintiff's Retirement Contribution

The plaintiff claims that the defendant discriminated against him on the basis of his national origin by "fail[ing] to provide [him] the promised retirement contribution," Compl. ¶ 47, because the defendant "only made a 5.0% contribution for [the p]laintiff[,]" id. ¶ 21, while contributing 5.5% "to [the p]laintiff's colleagues of the same rank but different national origins," id.  The plaintiff alleges that, "in 2018, [he] contacted [an employee] in [the d]efendant's Human Resources department[, who] . . . acknowledged that [he] had been improperly undercompensated for the past five years."  Id. ¶ 23.  The plaintiff further alleges that "[the d]efendant ultimately corrected the retirement contribution to 5.5%, but has not retroactively corrected the five years it undercompensated him."  Id. ¶ 24.  The defendant argues that the plaintiff's claim regarding his retirement compensation is time-barred because, "after the 2018 correction, [the p]laintiff had until 2019" to file a charge of discrimination, and the plaintiff did not file his EEOC Charge until "January 4, 2022[.]"  Def.'s Mem. at 7.  In opposition, the plaintiff invokes the Ledbetter Act, arguing that his claim is timely because he "continue[s] to be 'affected' by the [d]efendant's discriminatory decision," Pl.'s Opp'n at 10 (emphasis omitted), since the defendant has yet to "reimburs[e] [him] for pay he was discriminatorily denied," id.

As previously noted, see supra Section III.B.1, "[i]n the District of Columbia, a plaintiff has 300 days to file a charge [of discrimination] with the EEOC[,]" Proctor v. District of Columbia, 74 F. Supp. 3d 436, 455 (D.D.C. 2014).  Although the Ledbetter Act may revive

otherwise untimely claims, liability accrues under this Act only "where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge."  42 U.S.C. § 2000e-5(e)(3)(B).

Here, the plaintiff is seeking retroactive amendment of his retirement contribution for the years 2013 to 2018.  See Compl. ¶¶ 22–23.  Assuming that the plaintiff was not provided the correct retirement contribution until December 31, 2018, see Compl. ¶¶ 23, 24 (stating that "in 2018, . . . [an employee] in [the d]efendant's Human Resources department . . . acknowledged that [the p]laintiff had been improperly undercompensated for the past five years" and that "[the d]efendant ultimately corrected the retirement contribution to 5.5%, but has not retroactively corrected the five years it undercompensated him"), he had until 300 days later—i.e., October 27, 2019—to file a charge of discrimination challenging the deficient contribution. However, the plaintiff did not file his charge of discrimination until "January 4, 2022[,]" Compl. ¶ 8, long after the expiration of the 300-day filing deadline, see 42 U.S.C. § 2000e-5(e)(1), for a claim regarding the defendant's alleged failure to retroactively amend the retirement contributions made between 2013 and 2018.  Furthermore, as the defendant correctly observes, "the Complaint is silent on any 'similar or related' post-2018 employment practice which would have extended the statute of limitations [of] Title VII for this claim" pursuant to the Ledbetter Act.  Def.'s Reply at 4 (quoting 42 U.S.C. § 2000e-5(e)(3)(B)); see generally Compl.  Thus, the Court concludes that the plaintiff did not timely exhaust his national origin discrimination claim relating to the defendant's failure to retroactively amend his retirement contributions for the years 2013 to 2018.

**b.    The Defendant's Alleged Failure to Increase the Plaintiff's Pay Following His Promotion to the Rank of Captain**

Next, the plaintiff alleges discrimination based on "[the d]efendant['s] fail[ure] to increase [the p]laintiff's pay from the Lieutenant rate to the Captain rate[,]" Compl. ¶ 29, after he was promoted "[o]n or about May 4, 2020," id. ¶ 26.  The plaintiff claims that "[i]t took [the d]efendant eight months to properly pay [the p]laintiff at the Captain rank, despite [the p]laintiff's repeated calls and emails requesting the correction[,]" id. ¶ 31, whereas "his other colleagues of different national origin who received the same promotion had no such issues with immediately receiving the new pay rate commensurate with their rank[,]" id. ¶ 32.  The defendant again moves to dismiss the plaintiff's claim as untimely because, "[b]ased on [his] assertion in the Complaint that his pay rate was corrected in December 2020, [he] had until no later than October 27, 2021—300 days after December 31, 2020—to file a charge of discrimination with the EEOC" and he did not do so "until January 4, 2022[.]"  Def.'s Mem. at 6.  In his opposition, the plaintiff again relies on the Ledbetter Act, arguing that "[a]lthough the [d]efendant corrected [the plaintiff's] pay in December 2020, by not reimbursing [the p]laintiff for pay he was discriminatorily denied, the [p]laintiff continued to be 'affected' by the [d]efendant's discriminatory decision, and thus, his EEOC [C]harge on January 4, 2022, for that claim was timely."  Pl.'s Opp'n at 10 (emphasis omitted).

As to this claim, the plaintiff was "promoted [ ] to the rank of Captain" "[o]n or about May 4, 2020,"  Compl. ¶ 26, and his pay rate was allegedly corrected "in December 2020," Pl.'s Opp'n at 10; see also Compl. ¶ 31 ("It took [the d]efendant eight months to properly pay [the p]laintiff at the Captain rank[.]").  Assuming that the plaintiff was not provided the correct pay increase until December 31, 2020, he had until no later than October 27, 2021, to file a charge of discrimination with the EEOC to challenge the defendant's failure to pay him the correct salary.

13

See 42 U.S.C. § 2000e-5(e)(1).  Because the plaintiff did not file his EEOC Charge until January 4, 2022, see Compl. ¶ 8—over two months after the 300-day deadline expired—he did not timely exhaust his national origin discrimination claim relating to the defendant's failure to pay him the correct pay rate following his promotion.  See Proctor, 74 F. Supp. 3d at 455 ("In the District of Columbia, a plaintiff has 300 days to file a charge [of discrimination] with the EEOC.").

Moreover, the plaintiff makes no allegation that the defendant has failed to pay him the proper pay rate since the correction was made in December 2020, see generally Compl., and thus has not alleged "similar or related [ ] unlawful employment practices . . . that occurred outside the time for filing a charge[,]" 42 U.S.C § 2000e-5(e)(3)(B).  Consequently, as with the plaintiff's discrimination claim concerning the defendant's failure to retroactively amend his retirement contribution, see supra Section III.B.1.a, the Ledbetter Act does not revive the plaintiff's otherwise untimely claim regarding the defendant's failure to pay him the correct compensation after his promotion to the rank of Captain, see 42 U.S.C § 2000e-5(e)(3)(B) (stating that "liability may accrue . . . where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge").

The Court therefore concludes that the plaintiff did not timely exhaust his national origin discrimination claim based on the defendant's alleged failure to increase his salary following his promotion.

c.        **The Defendant's Alleged Failure to Timely Promote the Plaintiff**

The plaintiff also alleges discrimination based on his national origin due to the

defendant's "fail[ure] to reasonably promote [him] in a timely fashion."  Compl. ¶ 47.  The

plaintiff states that, "[o]n or about May 4, 2020, in part due to [his] experience, hard work,

devotion, qualifications, and reliability, [the d]efendant promoted [him] to the rank of Captain."

Id. ¶ 26.  However, the plaintiff alleges that "[he] is aware of nine other individuals of different

national origin who were hired as Lieutenants after him yet promoted to Captain and beyond

ahead of him[.]"  Id. ¶ 34.  In its motion to dismiss, the defendant argues that because "[the

p]laintiff concedes that on May 4, 2020, [the defendant] promoted him 'to the rank of

Captain[,]'" Def.'s Mem. at 8 (quoting Compl. ¶ 26), he "had until February 2021 to challenge

[the defendant's] failure to promote him" earlier, id., rendering the filing of the January 4, 2022

charge of discrimination with the EEOC "well past the 300-day window required under

Title VII[,]" id.  Nevertheless, the plaintiff again invokes the Ledbetter Act as support for his

position that he continues to be affected by the defendant's "fail[ure] to promote him to Captain

in a similar timeframe as similarly situated colleagues of a different national origin[.]"  Pl.'s

Opp'n at 9.  In its reply, the defendant asserts that "[the p]laintiff cannot rely on the Ledbetter

Act to revive his claim because the Act does not cover employment decisions such as

promotions."  Def.'s Reply at 2–3 (citing Schuler v. PricewaterhouseCoopers, LLP, 595 F.3d

370, 374 (D.C. Cir. 2010)).

As noted in the plaintiff's Complaint, he was "promoted [ ] to the rank of Captain[,]"

Compl. ¶ 26, "[o]n or about May 4, 2020," id., and filed his EEOC Charge one year and eight

months later on January 4, 2022, see Def.'s Mot., Exhibit ("Ex.") 1 (Charge of Discrimination

("EEOC Charge")) at 1, ECF No. 6-1.  The plaintiff's EEOC Charge was thus untimely because

it was not filed within 300 days of the alleged unlawful employment practice.  See 42 U.S.C. §
2000e-5(e)(1); Ndondji v. InterPark Inc., 768 F. Supp. 2d 263, 279 (D.D.C. 2011) ("Under Title
VII, a plaintiff must file a charge with the EEOC within 300 days of the date of the alleged
discriminatory act.").  Moreover, the Ledbetter Act does not save the plaintiff's failure to
promote claim because "the decision whether to promote an employee to a higher paying
position is not a 'compensation decision or other practice' within the meaning of that phrase in
the [Act.]"  Schuler, 595 F.3d at 375.  "The Ledbetter Act prevents employers from 'paying
different wages or providing different benefits to similarly situated employees'" and,
"[t]herefore, it is not implicated when a company makes a decision to 'promote one employee
but not another to a more remunerative position.'"  Rand v. Sec'y of the Treasury, 816 F. Supp.
2d 70, 75 (D.D.C. 2011) (quoting Schuler, 595 F.3d at 374).  Thus, the Ledbetter Act does not
revive the plaintiff's otherwise time-barred failure to promote claim.  See Newman v.
Amazon.com, Inc., No. 21-cv-531 (DLF), 2022 WL 971297, at *4 (D.D.C. Mar. 31, 2022)
("'[T]he plain language of the [Ledbetter Act] covers compensation decisions and not other
discrete employment decisions,' such as hirings, firings, promotions, and demotions." (second
alteration in original) (emphasis omitted) (internal quotation marks omitted)).  Therefore, the
Court concludes that the plaintiff did not timely exhaust his national origin discrimination claim
based on the defendant's alleged failure to timely promote him.

      **d.**    **The Defendant's Alleged Failure to Pay the Plaintiff the Correct Overtime
Rate**

Finally, the plaintiff alleges that the defendant discriminated against him based on his
national origin by "fail[ing] to properly pay [ ] [him at the] rightful overtime rate[.]"  Compl.
¶ 47.  The plaintiff states that "[i]t was not until 2021, eight years after his hire, [when] [he]
learned that [the d]efendant was paying his fellow officers of different national origins the 'time

and a half' rate for their overtime hours[,]" id. ¶ 17, while paying his overtime hours at "his straight hourly rate" from the date of his hire in 2013, id. ¶ 16.  Additionally, in his EEOC Charge, the plaintiff alleges that he "continue[s] to be paid incorrectly regarding overtime[.]" Def.'s Mot., Ex. 1 (EEOC Charge) at 1.  The defendant argues that the plaintiff's claim is untimely because "the 300-day clock starts running as soon as the discrete discriminatory act occurs" and, thus, "irrespective of when [the p]laintiff claims he discovered being paid a lower overtime rate, his discrimination claim based on failure to pay a higher overtime rate before March 10, 2021—300 days before [the p]laintiff's January 4, 2022 EEOC Charge—is untimely." Def.'s Mem. at 7.  In his opposition, the plaintiff again invokes the Ledbetter Act, arguing that,

> because the [p]laintiff in the instant matter was and is affected by the [d]efendant's discriminatory compensation decision beginning in 2013, every time the [p]laintiff was/is paid a different overtime hourly rate than his similarly situated colleagues of a different national origin, that claim is timely under the application of the [ ] Ledbetter Act.

Pl.'s Opp'n at 9 (emphasis in original).

The Ledbetter Act "was adopted by Congress to overrule the Supreme Court's decision in Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618 . . . (2007), which held that the time period for filing a charge with the EEOC began running when the pay decision was made and not each time the employee received an unequal paycheck."  Guerrero v. Vilsack, 134 F. Supp. 3d 411, 422 n.6 (D.D.C 2015).  Consequently, the Ledbetter Act "changed what it means for a discriminatory practice to 'occur.'"  Id. at 423.  As amended by the Ledbetter Act, Title VII

> now provides that a discriminatory compensation practice occurs "[1] when a discriminatory compensation decision or other practice is adopted, [2] when an individual becomes subject to a discriminatory compensation decision or other practice, or [3] when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice."

Id. (emphasis in original) (quoting 42 U.S.C. § 2000e–5(e)(3)(A)).

Here, contrary to the plaintiff's other arguments regarding his national origin discrimination claim, the plaintiff has alleged that, from the beginning of his employment in 2013, see Compl. ¶ 13, his "overtime hours were paid at his straight hourly rate, not the 'time and a half' rate[,]" id. ¶ 16, and that he "continue[s] to be paid incorrectly regarding overtime," Def.'s Mot., Ex. 1 (EEOC Charge) at 1; see also Pl.'s Opp'n at 9 (arguing that "every time the [p]laintiff was/is paid a different overtime hourly rate than his similarly situated colleagues of a different national origin, that claim is timely under the application of the [ ] Ledbetter Act"). Thus, the plaintiff's Complaint alleges that a discriminatory compensation practice is occurring under Title VII, as amended by the Ledbetter Act, because each time the plaintiff works overtime and receives the incorrect overtime rate, he "is affected by application of [the] [allegedly] discriminatory compensation decision[,]" 42 U.S.C. § 2000e–5(e)(3)(A), to pay him "his straight hourly rate," Compl. ¶ 16, rather than the time and a half rate paid to "fellow officers of different national origins[,]" id. ¶ 17. This "disparate pay claim[] under Title VII . . . [is] not [ ] barred pursuant to 42 U.S.C. § 2000e-5(e)(3) because [the p]laintiff's statute-of-limitations clock effectively resets each time []he receive[s] a[n unequal] paycheck from [the defendant,]" Hammel v. Marsh USA Inc., 206 F. Supp. 3d 219, 231 (D.D.C. 2016).  See Johnson, 632 F. Supp. 2d at 22 (explaining that, under the Ledbetter Act, "each paycheck resulting from the original discriminatory compensation decision or other practice triggers a new filing, in effect reviving a claim that otherwise would have been time-bared because of a failure to [timely] exhaust administrative remedies" (internal quotation marks omitted)); Hammel, 206 F. Supp. 3d at 232 (stating that the Ledbetter Act "amended Title VII to expressly toll the statute of limitations each pay period, thereby expanding the time period allowed to bring disparate pay

claims under Title VII").  The Court therefore concludes that the plaintiff has timely exhausted

his national origin discrimination claim regarding the alleged failure of the defendant to pay him

the correct overtime rate and that he is "entitled to pursue [t]his discriminatory compensation

claim[] under Title VII . . . , subject to the limitations on relief set forth in section 3 of the

[Ledbetter Act]."[3]  Johnson, 632 F. Supp. 2d at 22; see 42 U.S.C. § 2000e-5(e)(3)(B) (stating that

liability "may accrue and an aggrieved person may obtain relief . . . , including recovery of back

pay for up to two years preceding the filing of the charge").

       In sum, the Court concludes that the plaintiff has failed to timely exhaust his

administrative remedies with respect to each aspect of his national origin discrimination claim in

Count One, except for his allegation regarding the defendant's alleged failure to pay him the

appropriate overtime compensation rate.  Accordingly, the Court will grant the defendant's

motion to dismiss the plaintiff's national origin discrimination claim regarding the plaintiff's

allegations of the defendant's (a) failure to retroactively amend the retirement contributions

made on his behalf by the defendant, (b) failure to increase his salary following his promotion to

the rank of Captain, and (c) failure to timely promote him.  However, the Court will deny the

defendant's motion with respect to the plaintiff's allegation that the defendant failed to pay him

the appropriate overtime rate.

---

[3] Indeed, the Court notes that, in its reply, the defendant seemingly concedes that the plaintiff's discrimination claim based on the failure to pay the correct overtime rate is not time-barred.  See Def.'s Reply at 2 (stating that the "[p]laintiff's [d]iscrimination [c]laim [i]s [m]ostly [t]ime-[b]arred" (emphasis added)); id. at 5 (arguing that "because [the p]laintiff's claims related to the alleged failure to promote him, pay rate following [the p]laintiff's promotion, and retirement contribution percentage after the 2018 correction are time-barred, the Court should dismiss Count [One] to the extent [the p]laintiff relies on these discrete employment acts").  Moreover, the defendant admits that the plaintiff could recover limited back pay pursuant to the Ledbetter Act "[a]s to [his] discrimination claim based on [the defendant's] alleged failure to pay him the correct overtime rate," id. at 5 n.5.  See id. (stating that "[the p]laintiff could only recover 'back pay for up to two years preceding the [January 4, 2022] filing of the charge' under the Ledbetter Act's continuing violation theory" (second alteration in original) (quoting 42 U.S.C. § 2000e–5(e)(3)(B))).

C.      **The Plaintiff's Title VII Retaliation Claim**

The Court now turns to the defendant's challenges to the plaintiff's Title VII retaliation claim.  In Count Two of his Complaint, the plaintiff alleges that the defendant retaliated against him for "engag[ing] in protected activity by raising his concerns to various DCDOC staff about his disparate treatment in terms of (i) his retirement contributions; (ii) his overtime rate; (iii) his [salary increase]; and (iv) the false disciplinary actions alleged[ly taken] against him."  Compl. ¶ 55.  The plaintiff claims he was

> subjected to materially adverse employment actions, including increased scrutiny and threatened disciplinary action (suspension), along with [the d]efendant's failure to properly pay [the p]laintiff's rightful overtime rate, failure to provide the promised retirement contribution, failure to give [the p]laintiff the appropriate and timely raise upon his promotion, and failing to reasonably promote [the p]laintiff in a timely fashion.

Id. ¶ 56.  The plaintiff further alleges that the defendant "took these actions against [the p]laintiff due to his protected activity[,]" id. ¶ 58, and "intentionally attempted to punish [the p]laintiff and discourage others like him because of his protected activity[,]" id. ¶ 59.  In its motion to dismiss, the defendant argues that "the Court should dismiss Count [Two] of the Complaint[,]" Def.'s Mem. at 10, because the plaintiff (1) "failed to administratively exhaust his retaliation claim[,]" id. at 8, and (2) "fail[s] to state a claim for relief[,]" id. at 5, as he has not "plausibly allege[d] protected activity and causation[,]" id. at 9, and has not alleged actions that constitute "materially adverse actions" under Title VII, id. at 10.

On September 25, 2023, the Court held a hearing on the defendant's motion.  See Minute Entry (Sept. 25, 2023).  During the hearing, the plaintiff requested that he be granted leave to amend Count Two of his Complaint, and the defendant represented to the Court that it does not oppose the plaintiff's request.  Accordingly, in light of the plaintiff's request to amend Count Two of his Complaint and the defendant's concession, the Court will permit the plaintiff to file

an Amended Complaint with respect to his Title VII retaliation claim only and will deny without prejudice the defendant's motion to the extent it seeks dismissal of this claim.[4]

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant in part, deny in part, and deny without prejudice in part the defendant's motion.

**SO ORDERED** this 28th day of November, 2023.[5]

REGGIE B. WALTON
United States District Judge

---

[4] The defendant may file a new motion to dismiss the plaintiff's Title VII retaliation claim if it deems such a motion appropriate upon review of the plaintiff's forthcoming Amended Complaint.

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.